UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
BRICKLAYERS INSURANCE AND WELFARE                                 :
FUND, *et al.*,                                                   :
                                                                  : **MEMORANDUM DECISION**
                              Plaintiffs,                         : **AND ORDER**
                                                                  :
              - against -                                         : 18-cv-6599 (BMC)
                                                                  :
MASTERCRAFT MASONRY I, INC., *et al.*,                            :
                                                                  :
                              Defendants.                         :
                                                                  :
----------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs move for summary judgment on their several claims against defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons discussed below, plaintiffs' motion is granted in part as to liability and denied as to damages.

## BACKGROUND

Defendant Mastercraft is a masonry contractor that performs work on various jobs in New York City. Mastercraft is a member of the Associated Brick Mason Contractors of Greater New York ("ABMC"), a multi-employer bargaining association whose members employ Local 1 bricklayers. In mid-2015, ABMC entered into a collective bargaining agreement ("the CBA") with Local 1, requiring Mastercraft to assign all the masonry work it performs within Local 1's jurisdiction to Local 1 bricklayers. As part of the CBA, Mastercraft must make contributions on the Local 1 bricklayers' behalf, pursuant to specified hourly rates, to pay for pension benefits, medical benefits, and certain training programs. Mastercraft is also required to remit to the bricklayers their after-tax wage deductions that went to the Vacation Fund, and to transmit other

after-tax wage deductions to Local 1 and its parent to pay for the bricklayers' union dues (i.e., "dues checkoffs").

All CBA signatories are also subject to periodic audits. According to the combined findings of two separate audits of Mastercraft – covering the period of July 1, 2016 to March 31, 2019 – Mastercraft is currently delinquent in making its required payments in the total amount of $1,431,850.72. As part of that total amount due, plaintiffs assert that defendants Tantillo and Boemio are personally liable for $980,996.43 as fiduciaries over certain of Mastercraft's assets: $632,494.21 in unpaid contributions and assessments to the fund plaintiffs; $194,108.84 in Vacation Fund deductions to the bricklayers; and $154,393.38 in wage deductions to the union as dues checkoffs.

Plaintiffs further claim that defendant Northeast is an alter-ego company of Mastercraft, as it "perform[s] the same masonry work covered by Local 1's jurisdictional clause, employ[s] the same supervisors and employees, and have the same ownership" as Mastercraft, in addition to "continu[ing] Mastercraft's business operations." Therefore, plaintiffs say Northeast is jointly liable for the entirety of Mastercraft's delinquency.

Finally, plaintiffs claim that defendant Endurance is jointly liable for $514,747.20 in delinquent contributions and remittances related to the "East End Project." Specifically, they aver that Endurance issued a labor and materials payment bond, as surety on behalf of Mastercraft, for use in the East End Project. Thus, Endurance is a guarantor of that bond to the third-party beneficiaries for the contributions and remittances it was intended to cover.[1]

Plaintiffs move for summary judgment on all claims.

---

[1] It appears the amounts claimed in the amended complaint differ from those identified in plaintiffs' motion papers. For example, the complaint says Endurance is liable for $424,449.54, while the summary judgment memorandum of law says it is liable for $514,747.20. I've used the summary judgment numbers in this section as they are likely to be the more updated figures.

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant successfully does this, the burden shifts to the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

A dispute as to a material fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Id. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. When deciding a

motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (internal quotation mark omitted).

I. Liability

   a. Mastercraft

Mastercraft does not dispute that it "is liable to Plaintiffs to some extent for unpaid benefit contributions and dues checkoffs." Indeed, in its 56.1 Counter Statement, Mastercraft says it "concedes liability, but only disputes the amount of damages." And in response to plaintiffs' Request to Admit on liability, Mastercraft stated: "While the Mastercraft Defendants admit that Mastercraft owes the Funds some unpaid contributions for hours worked by Local 1 bricklayers during the period covering the Audit Period and Post-Audit Period, they specifically aver that the amounts sought in the Complaint are incorrect and do not reflect payments made by Mastercraft to the Funds."

Mastercraft is therefore liable for its delinquencies under the CBA, though the specific amount owed remains to be proven.

   b. Northeast

Plaintiffs contend that Northeast is an alter-ego and successor company to Mastercraft, and is therefore liable for all of Mastercraft's delinquencies. Although defendants do not expressly dispute Northeast's liability, they imply that the question is not yet ripe as it "hinges entirely on establishing the amounts that are due and owing to the Plaintiffs by Mastercraft." But because defendants acknowledge that Mastercraft owes plaintiffs *some* unpaid contributions, it stands to reason that the issue of Northeast's congruent liability actually is ripe.

Plaintiffs' main argument is that Northeast has taken on successor liability for all of Mastercraft's delinquencies, but what I think they really mean to say is that it has liability under

4

the single employer doctrine – if so, they would be right. That doctrine considers "[s]eparate companies . . . a 'single employer' if they are 'part of a single integrated enterprise.'" See Lihli Fashions Corp. Inc. v. N.L.R.B., 80 F.3d 743, 747 (2d Cir. 1996) (quoting Clinton's Ditch Coop. Co. v. N.L.R.B., 778 F.2d 132, 137 (2d Cir. 1985). To determine single employer status, a court examines the "interrelation of operations, common management, centralized control of labor relations and common ownership." See Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. Of Mobile, Inc., 380 U.S. 255, 256 (1965).[2]

Here, defendants' 56.1 Counter Statement responses prove that Northeast and Mastercraft are a "single employer." The two companies share employees, including by "rotating Mastercraft's bricklayer employees to Northeast projects." In fact, a "majority of [Northeast's] workers are Mastercraft employees." Additionally, Mastercraft's owner and general manager is also Northeast's general manager; both of Northeast's "supervisors" are also Mastercraft employees; and Northeast's owner and principal is also Mastercraft's "key contact person who regularly interacts with the bricklayers on behalf of Mastercraft." Finally, on multiple occasions, Northeast has paid benefit remittances to welfare funds on Mastercraft's behalf.

Because Northeast and Mastercraft are essentially a "single employer," Northeast is liable for Mastercraft's delinquencies.

   c. **Endurance**

Plaintiffs assert that "Endurance, as surety, issued the payment bond on behalf of Mastercraft, as principal, for the East End Project." Moreover, according to plaintiffs,

---

[2] Successor liability, on the other hand, is appropriate in cases where a new firm *takes over for* a predecessor firm. Stereotypically, this happens when "the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" See Bd. of Trustees of Sheet Metal Workers Local Union No. 137 Ins., Annuity & Apprenticeship Training Funds v. Silverstein, No. 92 Civ. 8519, 1995 WL 404873, at *3 (E.D.N.Y. July 6, 1995) (quoting Fall River Dyeing & Finishing corp. v. N.L.R.B., 482 U.S. 27, 43 (1987)). But because both Mastercraft and Northeast are both currently in operation, successor liability isn't quite the right fit for this analysis.

5

Mastercraft still owes $514,747.20 in "contributions and remittances on behalf of its bricklayers for that particular job." Therefore, they argue, Endurance is responsible for that amount and plaintiffs "are entitled to recover as third-party beneficiaries of the Payment Bond."

Like Northeast, Endurance does not dispute that it may be liable for a certain amount due under the bond. But it alleges that the "Audit Reports contain errors and similarly fail to credit Defendants for all payments made." Additionally, Endurance says that the plaintiff funds "often ignored Mastercraft's directions regarding allocations of Mastercraft's payments to Plaintiffs, with specific impact on the East End Contract."

If a surety bond agreement provides that its issuer would be liable to a third-party beneficiary in the event the principal fails to perform, then the third-party beneficiary may sue the issuer under the bond agreement. See Mason tenders Dist. Counsel Welfare Fund v. Silveri, No. 99 Civ. 3294, 2002 WL 31834460, at *2 (S.D.N.Y. Dec. 16, 2002); United States for Use of Charles H. Valley et al. v. Suffolk Const. Co, Inc., No. 95 Civ. 9363, 1998 WL 241628, at *3 (S.D.N.Y. May 12, 1998) ("Under New York law, the intention of the parties to a contractor's bond determines whether third parties have any right to sue thereunder.").

Endurance concedes that it "furnished a labor and materials payment bond . . . on behalf of Mastercraft for the 20 East End project." Furthermore, the bond agreement acknowledges that a proper claimant is any "individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to *furnish labor*, materials or equipment for use in the performance of the Construction Contract" (emphasis added). Therefore, Endurance is jointly liable to Local 1 for Mastercraft's contribution and remittance delinquencies under the labor contract for the East End Project.[3]

---

[3] This determination is made without prejudice to Endurance's defense that plaintiffs themselves created some of the delinquencies by misdirecting payments made by Mastercraft.

### d. Tantillo and Boemio

Plaintiffs claim that individuals Tantillo and Boemio are personally liable for breach of fiduciary duty for "failing to make payments to the Bricklayers' Pension Fund, Annuity Fund and IPF, and for failing to remit Vacation Fund deductions taken from the wages of Local 1 members during the Audit Period." Plaintiffs also claim that Tantillo and Boemio are liable for conversion of wage deductions that were supposed to go toward union dues, but were instead used to pay creditors and corporate expenses.

"A fiduciary breaches his . . . duty to a plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled." Blatt v. Marshall & Lassman, 812 F.2d 810, 813 (2d Cir. 1987). Section 1002(21)(A) of United States Code Title 29 provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

But "[u]nlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." See LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (quoting Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 881 (S.D.N.Y. 1997)). "Thus, whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." Blatt, 812 F.2d at 812 (collecting cases).

Conversion, on the other hand, "occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 124 (S.D.N.Y. 1996). However, ERISA preempts state common law claims that "relate to" an employee benefit

plan.  See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 285 (2d Cir.1992), abrogated on other grounds by Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003).  This preemption "encompass[es] common law causes of action that 'purport to provide a remedy for the violation of a right expressly guaranteed by ERISA.'"  Id. (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 145 (1990).  For this reason, neither Tantillo nor Boemio are liable for common law conversion because ERISA has preempted that claim in this context.  See Ingersoll-Rand Co, 498 U.S. at 145.

Turning to the breach of fiduciary duty allegations, defendants concede that "[a]ll decisions involving Mastercraft, including those involving Plaintiffs, were solely made by Mastercraft's General Manager and current owner, Tantillo."  Therefore, insofar as Mastercraft misallocated plan assets, thereby "preventing or interfering with the receipt of [plaintiffs'] benefits," see Blatt, 812 F.2d at 813, Tantillo is personally liable as a fiduciary for the plan funds.

It is not so cut and dried for Boemio.  Plaintiffs say he is a fiduciary for the plan funds because he (1) was the president and 50% owner of Mastercraft; (2) executed the application for the Endurance payment bond on behalf of Mastercraft; (3) was responsible for paying Mastercraft's debts and signing Mastercraft's tax forms; and (4) represented during a settlement conference with plaintiff Sullivan that he took a disbursement from Mastercraft in 2016.  At bottom, plaintiffs argue that Boemio is a fiduciary because of the "significant role [he played] in the operation of Mastercraft."

Defendants disagree.  In addition to their contention that the settlement conference evidence is inadmissible, defendants maintain that Boemio "did not exercise authority or control regarding the disposition of plan assets, nor did he determine what creditors of Mastercraft

8

would be paid." In support of Boemio's non-fiduciary status, defendants offer numerous statements from the sworn declarations of both Tantillo and Boemio. Among them that "I was a passive owner of Mastercraft" (Boemio); "I did not exercise any actual authority or control over the operations of Mastercraft" (Boemio); "I never took a disbursement from Mastercraft in 2016" (Boemio); and "I, as General Manager, made all decisions on behalf of Mastercraft" (Tantillo).

Given the competing evidence – and regardless of whether plaintiffs' settlement conference exhibit is admissible – defendants have undoubtedly raised a genuine factual dispute regarding Boemio's functional status as a fiduciary for the plan funds. See LoPresti, 126 F.3d at 40. Furthermore, neither Boemio's corporate titles nor his business dealings unrelated to plaintiffs carry much weight because they do not necessarily bear on his actions or responsibilities with regard to the *funds at issue*. See id.; Blatt, 812 F.2d at 812; 29 U.S.C. § 1002(21)(A) (defining a fiduciary in terms of his relationship to "*such plan*" or "*its assets*," and not a person's general or abstract role in a company). Therefore, summary judgment on Boemio's liability for breach of fiduciary duty is denied.

**II.     Damages**

Considering that plaintiffs' own damages numbers don't even appear to match up between their complaint and motion papers, the Court is already hesitant to grant summary judgment on an exact damages figure. This is especially the case to the extent the discrepancies are in part due to the findings of a post-discovery audit report, as defendants claim.

But besides that, defendants raise several factual issues that preclude summary judgment on damages. First, they contend that plaintiffs, on their own, disregarded Mastercraft's directives to apply specific payments to specific funds. That could disturb the stated amounts owed by any of the defendants except, perhaps, Mastercraft and Northeast. Second, they argue

that plaintiffs appear to have been applying Mastercraft's payments toward an already-satisfied settlement agreement. If true, and those payments should have gone to pay off the debts at issue in this lawsuit, the damages numbers would necessarily be mistaken. These inconsistencies are enough to convince the Court that there is still quite a bit of work to be done before final, accurate damages figures can be distilled from the balance sheets.

Therefore, summary judgment as to damages is denied.

## CONCLUSION

Plaintiffs' [39] motion for summary judgment is granted in part and denied in part. The Court will enter a separate order to schedule a trial on damages.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      January 7, 2020